UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:20-CR-20-KAC-DCP |
| ) | |
| NATHANIEL T. TAYLOR, ) | |
| ) | |
| Defendant. ) | |

### ORDER ON REPORT AND RECOMMENDATION

This criminal case is before the Court for consideration of the Report and Recommendation ("Report") issued by United States Magistrate Judge Debra C. Poplin [Doc. 33], recommending that the Court deny Defendant Nathaniel Taylor's "Motion to Suppress" [Doc. 16]. Judge Poplin held a hearing on the motion to suppress [Docs. 22-25], received the Parties' supplemental briefs [Docs. 26-27, 30-31], and issued the Report [Doc. 33], recommending that the Court deny Defendant's motion to suppress because "the stop, detention, and frisk of the Defendant comport with the Fourth Amendment" [*id.* at 30]. Specifically, the Report concluded that (1) Officer Kristin Cox "properly stopped Defendant for a traffic violation" [*id.*], (2) "the officer had reasonable suspicion to detain Defendant beyond the time necessary to complete the traffic citation and that detention was reasonable in scope and duration" [*id.*], and (3) "the officer had reasonable suspicion to conduct a *Terry* frisk" [*Id.*]. In addition to raising numerous factual objections, Defendant objects to the Report's conclusions that (1) Defendant "was speeding at the time of the traffic stop" [Doc. 36 at 34], (2) Officer Cox "had reasonable suspicion of criminal activity to extend the duration of the stop beyond the time necessary to conduct the stop for a traffic violation" [*id.* at

35], and (3) Officer Cox "had reasonable suspicion to believe that Mr. Taylor might be armed and dangerous to support the Terry frisk of his person prior to the free air sniff" [*Id.*].

Because Officer Cox had probable cause to stop Defendant's vehicle for a traffic violation and reasonable suspicion to extend the detention to conduct a search of the vehicle, the Court **ACCEPTS** the relevant portions of the Report [Doc. 33], **OVERRULES** Defendant's objections as to those relevant portions [Doc. 36], and **DENIES** Defendant's "Motion to Suppress" [Doc. 16]. Further, because the traffic stop, extended detention, and vehicle search were lawful, the Court need not address the portion of the Report analyzing whether Defendant "waived his Fourth Amendment rights as a condition of his state probation" [Doc. 33 at 15; *see id.* at 15-20]. Nor does the Court evaluate the "Propriety of the Frisk" [*id.* at 28-30] because there was no evidence obtained from the patdown of Defendant that is subject to suppression.

I.    Background

On February 19, 2020, the Grand Jury charged Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), on or about January 21, 2019 [Doc. 1]. Defendant moved to suppress "all evidence obtained in this case including a firearm and ammunition uncovered following a traffic stop of Defendant" [Doc. 16 at 1], alleging it was "uncovered" through a stop, search, and seizure that were "in violation of his Fourth Amendment rights" [Doc. 16 at 1]. After substantial briefings and a hearing on the motion [*see* Docs. 16, 19, 22-27, 30-31], Magistrate Judge Poplin issued her Report [Doc. 33].

The Report concludes that (1) "the officer properly stopped Defendant for a traffic violation," (2) "the officer had reasonable suspicion to detain Defendant beyond the time necessary to complete the traffic citation and that the detention was reasonable in scope and duration," and (3) "the officer had reasonable suspicion to conduct a *Terry* frisk" [*Id.* at 30]. The Report,

therefore, recommends that the undersigned deny Defendant's motion to suppress because the "stop, detention, and frisk of the Defendant comport with the Fourth Amendment" [*Id.*].

Defendant timely filed objections to the Report's findings and recommendations [Doc. 36]. *See* Fed. R. Crim. P. 59(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, . . . a party may serve and file specific written objections to the proposed findings and recommendations."). Defendant objected to the Report's findings and recommendations as to (1) whether the officer had probable cause for the initial traffic stop, (2) whether the officer had reasonable suspicion to extend the stop, and (3) whether the officer had any legal authority to conduct the *Terry* frisk of Defendant's person [*See* Doc. 36]. But he did not raise any specific objections to the Report's findings and recommendations regarding (1) when the traffic stop, if lawful, concluded or (2) why Defendant's "probationary search condition" is not applicable to Defendant's suppression motion [*See* Doc. 36]. The Government did not raise any objections to the Report; however, it opposed Defendant's objections [*See* Doc. 39].

II. **Analysis**

    **A. Legal Standard**

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* If a timely objection is made under Section 636(b)(1)(C) and that objection is not "frivolous, conclusive[,] or general," *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986), "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which [the] objection is made," 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim P. 59(b)(3) ("district judge must consider de novo any objection to

the magistrate judge's recommendation"). However, the Court need not engage in de novo review of undisputed portions of the Report. *See Mira*, 806 F.2d at 637.

### B. Probable Cause for Traffic Stop

Defendant filed specific objections seeking de novo review of the Report's findings and recommendations regarding the Report's "legal conclusion" that there was "probable cause for the traffic stop in this case" [Doc. 36 at 13]. *See* 28 U.S.C. § 636(b)(1)(C); *Mira*, 805 F.2d at 637; Fed. R. Crim. P. 59(b)(3). Defendant argues that the "burden of proof is on the government" and that it did not "show that a traffic violation ha[d] occurred" [Doc. 36 at 130 (citing *United States v. Miller*, 413 F. App'x 841, 844 (6th Cir. 2011))]. The Defendant also argues that "the video show[n] in Court" does not show "the speed of Mr. Taylor's vehicle" [*Id.*].

Under Sixth Circuit precedent, if "at the time of the stop" the officer "reasonably believed" Defendant "was violating" the law by exceeding the speed limit, "then whether [Defendant] was *actually* violating [that law] is irrelevant." *United States v. Hughes*, 606 F.3d 311, 320 (6th Cir. 2010) (emphasis in original). Rather, "[t]he requirements of probable cause are satisfied where the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* (cleaned up).

Here, the officer reasonably believed that Defendant's vehicle was "going 69MPH in a 55MPH zone" [Doc. 33 at 22 (quoting Doc. 23, Ex. 1); *see also* Doc. 23, Ex. 3B at 13:47:01-30]. And there is ample, unobjected to, evidence present in the record establishing that "the facts known to the officer at the time of the stop were sufficient to constitute probable cause to believe that a traffic violation had occurred." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). For example, the officer's radar recorded Defendant's vehicle "traveling at sixty-nine miles per hour"

4

[Doc. 33 at 13] on a "section of I-275" where "the speed limit . . . was fifty-five miles per hour" [*Id.*; *see also id.* at 22; *see e.g.*, Doc. 25 at 7-12 (testimony of Officer Cox); Doc. 23 (Government Ex. 5)]. If the speed of Defendant's vehicle exceeded the speed limit in effect at that place and time, Defendant's conduct would have violated Section 55-8-152 of the Tennessee Code. And, even if it were later determined that Defendant did not in fact violate Section 55-8-152, the officer still had probable cause at the time she initiated the stop of Defendant's vehicle because the "facts known to the officer *at the time of the stop* were sufficient to constitute probable cause to believe that [the] traffic violation had occurred." *See Ferguson*, 8 F.3d at 391 (emphasis added); *see also Hughes*, 606 F.3d at 316 (Officers are not required "to, at the time of the stop, cite chapter and verse—or title and section—of a particular statute or municipal code in order to render the stop permissible," but they "may not look for after-the-fact justifications for stops that would be otherwise impermissible.").

Therefore, as stated in the Report, the officer "had probable cause to stop Defendant Taylor's Buick for speeding" [Doc. 33 at 22]. Accordingly, because the officer had probable cause for the initial traffic stop, the Court **OVERRULES** Defendant's objections [Doc. 36] and **ADOPTS** the portion of the Report [Doc. 33] related to the initial traffic stop.

### C. Scope of Detention

Having concluded that the traffic stop was lawful at the outset, the Court next considers whether the stop was impermissibly extended in violation of the Fourth Amendment. Defendant filed specific objections seeking de novo review of the Report's findings and recommendations as to the "Scope of Detention" [*See* Doc. 33 at 14, 23-28; Doc. 36 at 9-14, 16-31]. *See* 28 U.S.C. § 636(b)(1)(C); *Mira*, 805 F.2d at 637; Fed. R. Crim. P. 59(b)(3).

The Report "finds that the scope of the detention exceeded the time necessary for the traffic stop by approximately six minutes" [Doc. 33 at 24]. However, the Report identified and considered a number of factors, and determined "that these factors, considered in the aggregate, constituted articulable facts providing a reasonable suspicion to detain Defendant beyond the time necessary to complete the traffic ticket" [*Id.* at 26-27]. Accordingly, the Report concluded that the extended detention did not violate the Fourth Amendment because the officer "had ***reasonable suspicion*** to detain Defendant Taylor for approximately six minutes until the arrival of the K-9 team and for an additional two minutes for the dog sniff" [*Id.* at 28 (emphasis added)]. Defendant objects to the Report's conclusion "that Officer Cox had a reasonable suspicion of criminal activity to extend the duration of the stop beyond the time necessary to conduct the stop for a traffic violation" [Doc. 36 at 34-35] but agrees with the Report's finding that "the officer" extended the stop for "a full six minutes beyond the time necessary for her to complete the citation in order for the K-9 unit to arrive" [*Id.* at 17]. The Government also agrees "that the stop lasted longer than normal," but asserts that "the Magistrate Judge correctly concluded that Officer Cox was justified in extending the stop because there was reasonable suspicion that criminal activity was afoot" [Doc. 39 at 4].

"'[A] seizure that is lawful at its inception can still violate the Fourth Amendment if its manner of execution unreasonably infringes [upon] interests protected by the Constitution.'" *United States v. Nobles*, 762 F.3d 509, 519-20 (6th Cir. 2014) (cleaned up) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). And "[t]he extension of a stop beyond its original purpose . . . is a new Fourth Amendment event." *United States v. Johnson*, 482 F. App'x 137, 143 (6th Cir. 2012); *see also Terry v. Ohio*, 392 U.S. 1, 27 (1968). While an officer's "use of [a] narcotics dog does not itself raise Fourth Amendment concerns," the Parties agree that the officer "extended

6

an already-completed stop . . . to conduct a dog sniff." *United States v. Winters*, 782 F.3d 289, 297 (6th Cir. 2015). Therefore, "the occupant[] '[could not] be further detained ***unless*** something ***that occurred during the [lawful traffic] stop*** caused the officer to have ***a reasonable and articulable suspicion that criminal activity was afoot***.'" *Id.* (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) (emphasis added).

"Reasonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop." *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Reasonable suspicion requires that the officer have more than a "hunch." *United States v. Garrido*, 467 F.3d 971, 982 (6th Cir. 2006) (quoting *United States v. Sokolow*, 490 U.S. 1 (1989)). But it permits officers "to judge [an individual's] behavior and the information obtained" during the course of the lawful "stop against the backdrop of their own experience and knowledge," *United States v. Garrido*, 467 F.3d 971, 983 (6th Cir. 2006) (citing *United States v. Hill*, 195 F.3d 258, 270 (6th Cir. 1999)), and "to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person,'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 499 U.S. 411, 418 (1981)).

To determine "whether the combination of factors considered by the officer [was] sufficient for reasonable suspicion," courts look to the "totality of the circumstances." *United States v. Townsend*, 305 F. 3d 537, 542 (6th Cir. 2002) (emphasis omitted). "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *See Arvizu*, 534 U.S. at 277-78 (2002) (citation omitted). Rather, "[i]n considering all of the circumstances, the question is . . . whether all of [the factors] taken together give rise to the reasonable suspicion

7

that criminal activity may be afoot." *United States v. Marxen*, 410 F.3d 326, 329 (6th Cir. 2005) (citing *Arvizu*, 534 U.S. at 274-75). "The government, in establishing reasonable suspicion, cannot rely solely on 'relatively minor' factors that are 'subject to significant qualification.'" *United States v. Calvetti*, 836 F.3d 654, 666 (6th Cir. 2016) (quoting *United States v. Stepp*, 680 F.3d 651, 664 (6th Cir. 2012) (internal citation omitted)). While "some factors are more probative than others," a court must find that, under the totality of the circumstances, the factors "sufficed to form a particularized and objective basis" for the officer to permissibly extend the stop under the Fourth Amendment. *Arvizu*, 534 U.S. at 277-278. This is a fact-based determination. *See e.g., United States v. Ellis*, 497 F.3d 606, 613 (6th Cir. 2007) (collecting cases and identifying factors). As such, "[t]he Supreme Court has recognized that . . . [a] 'determination'" in one case "'will seldom be a useful precedent for another.'" *Townsend*, 305 F.3d at 542 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 n.11 (1983)).

Here, the Report states that the officer "testified that Taylor's movements within the car, the presence of multiple air fresheners, the seeming inconsistency in his direction and location of travel, and his prior drug conviction caused her to suspect criminal activity" [Doc. 33 at 26] and that, "based upon these factors, Officer Cox" thereafter "decided to call for a drug dog" [*Id.*]. The Court's summary of the officer's testimony and the officer's testimony, itself, is supported by the video recording from her vehicle dash camera [*See generally* Doc. 32, Ex. 3B; Doc. 33].

Defendant raises a number of objections, addressing each factor the officer relied on and providing a purportedly innocent explanation for the factor [*See* Doc. 36 at 24-31]. However, the Supreme Court has expressly stated that "[t]he totality-of-the-circumstances test 'precludes this sort of divide-and-conquer analysis'" and reminded lower courts that they cannot simply "dismiss outright any circumstances that [are] 'susceptible of innocent explanation.'" *District of Columbia*

8

*v. Wesby*, 138 S. Ct. 577, 588 (2018) (quoting *Arvizu*, 534 U.S. at 274, 277); *see also United States v. Campbell*, 511 F. App'x 424, 428 (6th Cir. 2013) (noting "the Court has counseled against a divide-and-conquer analysis" (citation omitted)).

As an initial matter, before she extended the traffic stop by calling for a K-9 officer, Officer Cox can be heard telling another officer that, during the lawful traffic stop, she (1) saw "all the Christmas trees hanging from [Defendant's] car . . . on his gear shift," (2) knew Defendant's "prior history report" included prior gun and drug convictions, and (3) heard Defendant tell her that he was coming from Culver's in West Knoxville [Doc. 32, Ex. 3B at 13:57:38-13:38:47]. Each of those factors raised Officer Cox's suspicion.

***First***, Officer Cox testified that she saw "quite a bit" of air fresheners hanging from the gear shift in Defendant's car [Doc. 25 at 19] and that "the smell-good odor . . . would be common suspicion for [her] of possible narcotics" [*id.* at 18] based on her training and experience [*Id.* at 65]. ***Second***, Officer Cox testified that during the lawful traffic stop she learned of Defendant's specific criminal record, including unlawful narcotics and weapons possession and burglary, assault, and battery [Doc. 32, Ex. 3B at 13:52:40-13:53:15], and "thought, man, he's got some pretty violent history" and that the "narcotic charge" was "yet another thing that's going to raise my brow on top of the things that I already felt that were suspicious that he had done" [*Id.* at 23]. While prior criminal history alone does not provide reasonable suspicion, "the specific nature of [an individual's] criminal history" when "combined with" other factors, could, under "the totality of the circumstances demonstrate[]" an officer's "reasonable suspicion that criminal activity was afoot." *States v. Stepp*, 680 F.3d 651, 667 (6th Cir. 2012). ***Third***, while Defendant did not tell the officer where he was going, she determined that "his story don't make sense" given her inferences of where he came from and where he was going [Doc. 32, Ex. 3B at 13:58:34-47]. However, as

9

Defendant argues, it is not clear from the record that the officer had full information to draw any specific, reliable inferences [Doc. 36 at 27-28]. Therefore, the Court gives this factor less weight.

These factors alone may not have been enough to establish reasonable suspicion. But they were not the only factors that Officer Cox considered. She testified to particular movements by Defendant during the lawful traffic stop that, based on her training and experience, caused her to have articulable suspicion that he was involved in criminal activity. For example, Officer Cox testified:

> During the initial approach, . . . it seemed very odd to me when he opened the [glove] box, ***he just kind of fingered through a stack of papers that was in there . . . and the movements he did with the papers wasn't sufficient to even see what the paper was to know what he was touching anyways***.

[Doc. 25 at 17-18 (emphasis added)]. Further, when Defendant opened the center console of the car to look for his proof of insurance, "it felt like ***he closed it pretty quickly, almost as if there was something in there maybe he forgot was there or he didn't want me to see***" [*Id.* at 18 (emphasis added)]. Additionally, when Officer Cox returned to her cruiser after asking Defendant "to look for his insurance" Defendant made additional suspicious movements [*Id.* at 22]. Specifically, Officer Cox explained:

> I was aware that I asked him to look for his insurance so I expected some movement. However, ***his movement was not common for what I had requested*** and what I'm used to. . . . Typically they're small movements . . . . It's a reach to the glove box, a reach to the center console. ***I thought it was very odd the first time that he moved***, if you notice in the video, he completely disappears from my view, and it appears ***as if he's reaching straight back toward the back of the vehicle***. That ***heightened my awareness***.

[*Id.* at 22 (emphasis added)]. After that movement to the back of the vehicle, Defendant waived his hand to indicated to Officer Cox that he located his insurance information [*Id.*]. However, after

10

Defendant waived to the officer indicating that he found his insurance papers, she saw him making significant movement within the car again. As Officer Cox testified:

> ***There should be no more movement, but then he pulls his hand back up in the, into the car, and he does that big reach again and disappears again from my sight to the back seat of the vehicle***. It was at that point that I completely stopped what I was doing. I even had my gun sitting on my thigh, because the only thing I can think is for my safety what is he doing. Is he reaching for a gun, because that's not normal, so at that point my attention diverted to him and those big movements.

[*Id.* at 23 (emphasis added)]. Officer Cox confirmed that using her visual depth perception, she was "able to tell where [Defendant's] body was" and that he was "reaching for the back seat" [*Id.* at 69].

In the totality of the circumstances, these combined factors establish reasonable suspicion that criminal activity was afoot. During her initial approach, Officer Cox observed Defendant open and then quickly close the center console as though hiding something and cursorily flip through the glove box. She also had doubts about the accuracy of information Defendant gave her about his previous location. And she saw several air fresheners, which in her prior experience and training are often used to conceal the odor of narcotics. After she returned to her vehicle and Defendant was looking for his proof of insurance, she saw Defendant reached toward the back of his vehicle. That type of movement was atypical compared to her prior observations of and experiences with individuals searching for their insurance during a traffic stop. The movement was so large that Defendant's entire body was momentarily hidden from the view of the vehicle dash camera. She then learned that Defendant had prior criminal history that included unlawful narcotics and weapons possession and burglary, assault, and battery [Doc. 32, Ex. 3B at 13:52:40-13:53:15]. And, knowing these facts and cumulatively evaluating her observations, Officer Cox then saw Defendant reach toward the back of the car out of sight for a second time. This second

11

movement to the back of the car was so significant and abnormal that it caused her to stop what she was doing and focus on Defendant. "Although each series of acts was 'perhaps innocent in itself,' . . . taken together, they 'warranted further investigation.'" *Arvizu*, 534 U.S. at 274 (quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). Officer Cox, therefore, reasonably suspected that Defendant was engaged in criminal activity.

Relatedly, while Defendant does not appear to object to the Report's additional conclusion that the subsequent "alert" by the K-9 officer, provided probable cause to search the vehicle. The Court confirms that probable cause existed and notes that courts "do not evaluate probable cause in hindsight, based on what the search does or does not turn up." *Florida v. Harris*, 568 U.S. 237, 549 (2013) (citation omitted). As such, the Court **OVERRULES** Defendant's objections [Doc. 36] and **ADOPTS** the portion of the Report [Doc. 33] regarding the "Scope of Detention."

### D. Propriety of Frisk

Finally, Defendant filed specific objections seeking de novo review of the Report's findings and recommendations regarding the "Propriety of the Terry Frisk" and the Report's "conclusion that Officer Cox had probable cause to patdown Mr. Taylor when she removed him from his vehicle to facilitate the free air sniff by the narcotics dog" [*See* Doc. 33 at 28-30; Doc. 36 at 31]. *See* 28 U.S.C. § 636(b)(1)(C); *Mira*, 805 F.2d at 637; Fed. R. Crim. P. 59(b)(3). Specifically, Defendant asserts that "the officer lacked legal authority to conduct the search" of Defendant's person because the "patdown in this case was not supported by specific, articulable facts known to the officer which created a reasonable suspicion that [Defendant] might be armed and dangerous" [Doc. 36 at 31; *see also* Doc. 25 at 29 (officer testifying that she conducted "a pat-down for . . . weapons . . . for safety reasons")]. *See also United States v. Noble*, 762 F.3d 509, 521-26 (6th Cir. 2014) (collecting cases) ("while [the] interest in officer safety is legitimate and

12

weighty, an officer may perform a 'patdown' of a driver . . . only upon reasonable suspicion that they may be armed and dangerous" (cleaned up)).

If, an officer "lacked reasonable suspicion to conduct the pat-down search," then the evidence discovered through the course of that unlawful patdown would, generally, be suppressed. *See United Sates v. Pedicini*, 804 F. App'x 351, 356 (6th Cir. 2020). However, Defendant agrees that "no weapons or contraband were discovered pursuant to the patdown" [Doc. 36 at 31]. So, there would be no evidence to suppress from the allegedly unconstitutional frisk.

"The duty of this court . . . is to decide actual controversies[,] . . . not to give opinions . . . or declare principles or rules of law which cannot affect the matter in issue in the case before it." *Wheeler v. City of Lansing*, 660 F.3d 931, 940 (6th Cir. 2011) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). Here, because no weapons or contraband were recovered during the frisk, there is no evidence to suppress. "[A]n abstract judicial declaration" regarding the propriety of the patdown in this case "would 'create[] tension with Article III's prohibition against issuing advisory opinions.'" *Allen v. Whitmer*, No. 21-1019, 2021 WL 3140318, *3 (6th Cir. Jul. 26, 2021) (quoting *Wheeler*, 660 F.3d at 940). And Defendant "may not assert merely the 'vindication of the rule of law' as [his] basis for harm without alleging an actual injury from the purported violation." *In re Cap. Contracting Co.*, 924 F.3d 890, 898 (6th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998)). Because the relief Defendant seeks is **suppression of evidence** from the allegedly unconstitutional patdown and **no evidence was discovered through the patdown**, the Court need not evaluate the propriety of the patdown. *See United States v. Congo*, No. 2:18-cr-193-JDL, 2019 WL 2527090, at *2 n.1 (D. Me. June 19, 2019). Accordingly, the Court does not rule on the merits of Defendant's objections related to the frisk [Doc. 36] and does not adopt the portion of the Report [Doc. 33] related to the frisk.

13

### III. Conclusion

For the reasons stated herein, the Court (1) **OVERRULES** Defendant's "Objection to Report and Recommendation" [Doc. 36], (2) **ACCEPTS** the portions of the "Report and Recommendation" [Doc. 33] regarding the lawful traffic stop, lawful extension of the traffic stop, and lawful search of Defendant's vehicle, and (3) **DENIES** Defendant's "Motion to Suppress" [Doc. 16].

IT IS SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge

14

Case 3:20-cr-00020-KAC-DCP   Document 47   Filed 05/20/22   Page 14 of 14   PageID #: 466